LOELIGER, APPELLEE, *v.* AKRON BRASS MFG. CO., INC., APPELLANT.

(No. 1098—Decided June 18, 1947.) ·

*Mr. Marion F. Graven* and *Mr. George H. Barnard,* for appellee.

*Messrs. Critchfield, Critchfield & Critchfield,* for appellant.

DOYLE, P. J. Suit was commenced in the Court of Common Pleas of Wayne county by Gerold G. Loeliger, against The Akron Brass Manufacturing Company, in which he, the plaintiff, claimed, in his first cause of action, that there was due and owing him the sum of $4,150 as a "bonus" under a contract of employment with the said company. The petition prayed for this amount with interest on $2,250 from January 1, 1943, and with interest on $1,900 from January 1, 1944.

The answer of the defendant admitted the "bonus" plan as set forth in the petition and pleaded that "no bonus under this plan was ever due the plaintiff."

In a second cause of action the plaintiff prayed for $5,000, which amount, it is alleged, is a fair and reasonable compensation for work and labor performed for the company at the request of its officials over and beyond and in addition to the regular duties of the plaintiff with the company. And further that

he was promised compensation for the performance of this work in addition to his regular salary. The answer admitted that services were rendered under an agreement with the company, but pleaded that this work "was performed as a part of his regular work and employment; that he was fully compensated for such work by the salary he was then being paid." The reply of the plaintiff joined the issues.

The jury returned a verdict for the plaintiff in the sum of $6,650, allocated as follows: First cause of action $4,150; second cause of action $2,500. The judgment rendered on this verdict is the basis of the appeal to this court on questions of law.

There are numerous assignments of error. It is of first importance, we think, to examine the "bonus" agreement, in the light of the record, for the purpose of determining whether there is any evidence to sustain the jury's verdict on this claim and the judgment entered thereon.

The right of the plaintiff to receive a bonus must be found within the corners of the resolution of the company, the contract of employment and the audit. I here give them seriatim.

(a) The resolution—passed by the directors November 25, 1941:

"Resolved, that beginning with the calendar year 1942, an amount between 30 and 40% of the net percentage increase of net profit resulting from manufacturing operations, said amount not to individually exceed one-half of the salaries of the hereinafter named beneficiaries, should be set up in a pool to be shared in by the general manager, comptroller, and plant superintendent. The net profit percentage for the calendar year 1941 to be used as the basis for determining the net percentage increase in question.

"Resolved further, that said pool shall be divided into three equal parts and paid out of the funds of

the company to the general manager, comptroller, and the plant superintendent, as soon as the amount of said increase in percentage of net profit has been determined by the company's auditors, and the percentage to be distributed within the limit of 30 to 40% above described, has been determined.

"Resolved further, that said plan may be amended or discontinued for any year by action of the board prior to January 1 of any year."

(b) The contract of employment:

"Wooster, Ohio,
"December 15, 1941.

"Mr. Gerold G. Loeliger,
"Wooster, Ohio.

"Dear Mr. Loeliger:

"I have been authorized by the board of directors to employ you as plant superintendent beginning the 15th day of December, 1941, upon the following terms and conditions:

"1. Your salary rate shall be $5,000 per annum, payable semi-monthly.

"2. You will share in the bonus plan approved by the board of directors at the meeting of November 25 on an equal basis with the general manager and comptroller.

"3. Your employment shall be at the pleasure of the board and in the event your employment should be terminated for any reason, during any fiscal year period, your participation in any bonus fund for such fiscal year shall be determined by the board.

"4. Your duties and responsibilities will be outlined by the president from time to time.

"This letter shall constitute the entire agreement with you and no previous proposals and/or negotiations shall be binding.

"If the foregoing is acceptable to you, please so

indicate by signing the enclosed carbon at the space provided and return the same to me for my files.

"Very truly yours,

"Akron Brass Mfg. Company Inc.

"By S. G. Laugher, President."

(c) The audit (condensed):

|  |  | 1941 | % |
|---|---|---|---|
| 1. | Net sales | $1,015,731.48 | 100 |
| 2. | Cost of products sold | 663,831.78 | 65.36 |
| 3. |  | 351,899.70 | 34.64 |
|  | Selling, Advt. & Adm. Exp. | 142,228.04 | 14.00 |
|  | Net income from sales | 209,671.66 | 20.64 |
|  | Net income from all sources before taxes | 196,657.91 | 19.36 |
|  | Net profit after taxes | 117,150.01 | 11.53 |

|  |  | 1942 | % |
|---|---|---|---|
| 1. | Net sales | $1,854,182.81 | 100 |
| 2. | Cost of products sold | 1,276,042.91 | 68.82 |
| 3. |  | 578,139.90 | 31.18 |
|  | Selling, Advt. & Adm. Exp. | 157,592.34 | 8.50 |
|  | Net income from sales | 420,547.56 | 22.68 |
|  | Net income from all sources before taxes | 378,935.92 | 20.43 |
|  | Net profit after taxes | 89,435.92 | 4.82 |

|  |  | 1943 | % |
|---|---|---|---|
| 1. | Net sales | $2,568,048.91 | 100 |
| 2. | Cost of products sold | 1,843,677.74 | 71.79 |
| 3. |  | 724,371.17 | 28.21 |
|  | Selling, Advt. & Adm. Exp. | 170,408.38 | 6.64 |
|  | Net income from sales | 553,962.79 | 21.57 |

Net income from all sources
before taxes 503,130.01 19.59
Net profit after taxes 86,830.01 3.38

The above figures represent a condensation, presented by counsel, of the complete audit of the books of the company, and for the purposes of this decision are sufficient. The complete audit appears in the bill of exceptions.

1. What is meant by the technical language "net percentage increase of net profit resulting from manufacturing operations" as "has been determined by the company's auditors"?

The profit and loss account of the company now in litigation was prepared by the reputable accounting firm of Ernst & Ernst and followed the generally accepted auditing standards applicable to the circumstances.

The several figures on lines 1 following the words "net sales" represent the respective amounts paid into the company by its customers, less returns, allowances, etc.

The several figures on lines 2 following the words "cost of products sold" represent the respective expenditures which went directly into the manufacture of the product sold. These expenses are called *manufacturing costs* and include such items as cost of raw materials, labor, freight, power, etc.

It is generally accepted in accounting circles that net profit from *manufacturing operations* represents the difference between net sales and the cost of the goods sold—that is, the cost of those things which go directly into the manufactured product, rather than indirectly. And while such items as the cost of selling, advertisement, administration, etc., are all important items of cost and, of course, have a direct bearing on the net income or net profit of the entire business,

such items are usually determined to be, for the purposes of accounting, *non manufacturing* costs.

The complete audit of the company's books under inspection, shows that there was a net percentage decline in the net profits from manufacturing operations through the years 1942 and 1943, as compared with 1941. This is shown in the third lines of the condensed annual audits, *supra*. And such conclusion is fortified by the expert testimony of a certified public accountant, employed by the company's auditors, who supplied evidence of generally accepted auditing practices, and who, as an expert, interpreted the contents of his audit under consideration.

It is our conclusion that there is no evidence in the record to justify the payment of a bonus to anyone under the terms of the company's resolution of November 25, 1941, through which a bonus could be paid only after a "net percentage increase of net profit from manufacturing operations."

2. Examination has been made of the evidence offered and accepted in support of the second cause of action. In consideration thereof, the members of this court are of the opinion that it is of such a character that reasonable minds could reach different conclusions and that in submission of such issue to the jury the trial court did not commit error, as claimed, prejudicial to the rights of the defendant.

The judgment rendered on the first cause of action will be reversed and final judgment entered for the defendant. The judgment rendered on the second cause of action will be affirmed.

*Judgment accordingly.*

STEVENS and HUNSICKER, JJ., concur.